## HANFORD vs. BOCKEE.

1. Where a mortgagee releases from his mortgage a term in the mortgaged premises created by a life tenant, and the term is afterwards surrendered by a deed for that purpose, executed by the mortgagee, the tenant for life, and the grantee for years, and the release is extinguished, and the

I*

Hanford *v.* Bockee.

mortgage restored to its former situation, this leaves the relation of the parties as it stood before that term was created, and released from the mortgage.

2. When money is raised by mortgage or other pledge of a wife's property, for the benefit of her husband, the wife will be deemed a mere security for the husband, and she or her heir will be a creditor of the husband or his estate, in place of the mortgagee, to the amount of the debt discharged out of her estate.

3. If a husband borrows money on the security of the wife's estate, as the money is under his power, it is presumed, in law, to be taken by him, unless the contrary is shown ; but parol evidence is admissible to show for whose benefit the money was raised.

4. Where money is borrowed by a husband on the security of the wife's estate, and she intends to give the amount raised to him, or discharges him from it, his estate will not be charged (as between her estate and him). And this intention may be proved by parol, or inferred from the attending circumstances. So the husband will be discharged when he lays out the borrowed money in improvements on the wife's lands, with her approval.

5. But where a husband had advanced money which had been laid out in improvements upon the wife's lands, with her approval, and his wife told him to sell the property to repay himself, and he borrowed money, and, to secure it, joined with his wife in mortgaging other lands owned by her—*Held,*.

1. That so much of the mortgaged premises must be sold as would be sufficient to pay the principal of the sum borrowed.

2. That, as the husband, being life tenant (by curtesy) in possession, was bound to keep down the interest, that charge, if not paid by him, must be made out of his life estate in the residue of the premises not sold, before any land of the heir of his deceased wife could be sold for that purpose.

6. On the foreclosure of a mortgage given by a husband and wife since deceased, in her lifetime, to secure money borrowed to repay the former for advances by him to improve lands of the wife, as between the husband, he being in possession as tenant by the curtesy, and the infant heir of the wife, the principal will be made by a sale of so much of the mortgaged premises as may be required to pay it ; the interest and a proper share of the costs will be made by a sale of the life estate of the tenant by the curtesy; and if that should not sell for sufficient to pay the interest and such costs, the estate of the infant must be sold.   Hence, in such a case, the life estate of the husband in the residue was directed to be sold, and if it was not bid up to the amount of the interest and a proper share of the costs, it was ordered to be bid in and purchased by the guardian, in the name and for the benefit of the infant ; and, in that case, so much of the estate in fee, of the infant, in the land not sold to pay the principal, was ordered to be sold, including the life estate, as might be required to pay the interest and a proper share of the costs.   After such sale, the infant will, by subroga-

tion, be entitled to receive the moneys so raised out of his property for the debt of his father, out of the life estate of his father, and will be entitled to receive the deed for such life estate bought in for him, without any other consideration than the sale of his property.

The hearing of this case was had upon the bill and answer of the defendant, Lewis L. R. Bockee, and upon the proofs taken. The defendant, Abraham W. Bockee, suffered a decree *pro confesso* to be entered against him by the complainant, but appeared before the master in taking the testimony, and on the hearing by counsel as regards the equities between him and the infant defendant.

*Mr. S. Tuttle*, for complainant.

*Mr. L. Zabriskie*, for infant defendant.

1. Mortgagee cannot release part of mortgaged premises, and hold residue liable for whole mortgage debt. *Johnson* v. *Johnson*, 4 *Halst. C. R.* 561; *Stevens* v. *Cooper*, 1 *Johns. C. R.* 425.

2. As against remainderman, tenant for life is bound to keep down interest of mortgage. 4 *Kent's Com.* 75; *Coote on Mort.* 438; 1 *Story's Eq. J.*, § 488; 3 *Powell on Mort.* 322, 324, note; *Ib.* 921, and note.

3. Inasmuch as the mortgage in this case was made by the wife on her estate, as security for the debt of her husband, the estate of the husband should be first applied for its payment before resort is had to estate of the wife's heir in the mortgaged land. The estate of the wife stands simply as surety for the husband's debt. *Cruise on Real Property*, title 15, ch. 4, § 43; *Vartie* v. *Underwood*, 18 *Barb.* 561; *Loomer* v. *Wheelwright*, 3 *Sandf. C. R.* 135; *Neimcewicz* v. *Gahn*, 3 *Paige* 614; Lord Thurlow, in *Clinton* v. *Hooper*, 1 *Vesey, jun.*, 186.

The case of *Dickinson* v. *Codwise*, 1 *Sandf. C. R.* 214, is distinguishable from the present case, because there the money borrowed was expended by the husband for the purpose of improving the lands of the wife.

*Mr. G. N. Abeel*, for defendant, A. W. Bockee.

In equity, husband and wife may make contracts with each other as to their several estates. *Kennoul* v. *Money*, 3 *Swanst.* 203; *Clinton* v. *Hooper*, 1 *Vesey, jun.*, 173, Sumner's note; *Livingston* v. *Livingston*, 2 *Johns. C. R.* 537–539; 2 *Story's Eq. Jur.*, § 1372. Therefore Bockee had a right to put improvements on his wife's estate, at his own expense, with the understanding that she was to raise money to reimburse him.

Parol evidence is admissible to prove how the money raised by Bockee and wife on her property, was expended. *Coote on Mortgages* 485–6.

It is in evidence in this case, that Bockee expended more on this property than the principal and interest of the mortgage will amount to, with the understanding that he was to be reimbursed. Therefore the sum necessary to liquidate the mortgage and interest should be raised from a sale of the infant's estate, and not of Bockee's curtesy. The estate descended *cum onere*. He cited also *Greenl. on Ev.*, § 296.

THE CHANCELLOR.

There is no serious question made as to the right of the complainant to his debt, interest, and costs. Before the suit he had released from his mortgage a term in the mortgaged premises, created by A. W. Bockee the life tenant, for ten years. But this release has been extinguished, and the term surrendered by a deed for that purpose, executed by the complainant, A. W. Bockee, and the grantee of the term, and the mortgage restored to its former situation. This leaves the relation of the parties as it stood before that term was created, and released from the mortgage.

The mortgage of the complainant was given by Abraham W. Bockee and Maria Louisa his wife, to T. W. Marsh, dated April 21st, 1862. It was assigned by Marsh to the complainant, who now holds it. It was given for $6000, to secure the bond of A. W. Bockee for that amount, payable in three years from date, the interest payable semi-annually.

The mortgaged premises were the estate of Maria Louisa Bockee, the wife. She died intestate, seized of the premises, in December, 1864, leaving the infant defendant, Louis L. R. Bockee, her only issue and heir-at-law. She was married to Bockee in 1853.

It is admitted that the complainant is entitled to the whole principal secured by his mortgage, with interest from July 1st, 1864, up to which time the interest was paid by A. W. Bockee. The only contest is between A. W. Bockee and the infant, Louis L. R. Bockee, his son, as to which estate is primarily liable for the debt. On the part of the infant, it is contended that the curtesy of A. W. Bockee must first be appropriated to payment of the debt, and the deficiency only, if any, made of the remainder in fee, vested in the infant.

It appears by the evidence taken, that Mrs. Bockee was seized of a large tract of land at Ramapo, in Bergen county, at her marriage with Bockee; that she had not much money with which to improve it; that her husband, with her concurrence, and at her request, in the years 1855 and 1856, expended large sums of money in improving the estate; he states, in his testimony, that the amount thus expended was about $8000. The money borrowed of Marsh upon this mortgage, in 1862, was taken by A. W. Bockee, with the consent of his wife, and used by him in his own business. As he testifies, she gave it to him freely. He had received of her besides this loan, money to about the amount of $2000. He also testifies that she had verbally given him the whole property, and authorized him to sell it. But this, if clearly proved, could have no effect in the case. No parol gift of that kind by any one could have any effect in law or in equity.

When money is raised by mortgage or other pledge of a wife's property for the benefit of her husband, the wife will be deemed a mere security for the husband, and she or her heir will be a creditor of the husband or his estate, in place

of the mortgagee, to the amount of the debt discharged out of her estate.

And if a husband borrows money on the security of his wife's estate, as the money is under his power, it is presumed in law to be taken by him, unless it is shown to the contrary. And parol evidence is admitted to show for whose benefit the money was raised. These principles, applicable to this case, have for a long time been established in courts of equity. *Huntingdon* v. *Huntingdon*, 1 *Bro. P. C.* 1; *Pocock* v. *Lee*, 2 *Vern.* 604; *Tate* v. *Austin*, 2 *Vern.* 689, and 1 *P. W.* 264; *Kennoul* v. *Money*, 3 *Swanst.* 203, *note; Clinton* v. *Hooper*, 3 *Bro. C. C.* 201, and 1 *Ves., jun.*, 173; *Parteriche* v. *Powlet*, 2 *Atk.* 380; *Aguilar* v. *Aguilar*, 5 *Madd.* 252; *Neimcewicz* v. *Gahn*, 3 *Paige* 619; *Loomer* v. *Wheelwright*, 3 *Sandf. C. R.* 135; *Vartie* v. *Underwood*, 18 *Barb.* 564; *Coote on Mortgages* 485; 2 *St. Eq. Jur.*, § 1373; 1 *Cruise, tit. XV, ch.* 4, § 43 to 50.

But when the wife intends to give the amount raised to her husband, or discharges him from it, his estate will not be charged; and this may be proved by parol, or inferred from the attending circumstances. *Clinton* v. *Hooper*, 3 *Bro. C. C.* 201, and 1 *Ves., jun.*, 173. And he will be discharged when he lays out the money borrowed in improvements on the wife's lands, with her approval. *Dickinson* v. *Codwise*, 1 *Sandf. C. R.* 214.

In this case the husband had, with his wife's assent, and at her request, expended about $8000 in improvements upon her property, and had never received of her more than $2000 in money. These improvements were not put on the mortgaged property, but upon the homestead, where they resided, adjoining the mortgaged premises, and which at his wife's death came to the husband for his life, as his curtesy. They were made six years before the mortgage, during which time the husband had the benefit and enjoyment of them with his wife. The wife had told the husband to sell the property, and repay himself. He negotiated this mortgage, and she assented to his taking the money for his own

purposes. He gave her money afterwards, from $1000 to $2000 in amount, but it does not appear that it was asked for, or given as part of this loan as her own money; but it was given from time to time for her own purposes.

Under these circumstances, I think it must be inferred that the wife intended to relinquish this loan to her husband as his own, either as a gift, or to reimburse him for the money before expended by him for the improvement of her estate. This seems more probable as the amount of the loan was about the excess of that expenditure over the amount before received from her. The mortgage, therefore, so far as the principal is concerned, must be considered her debt, not to be reimbursed by her husband; and the property descended at her death to her son, subject to his father's curtesy, and both estates burdened by this debt. The principal sum of $6000, therefore, must be made by selling such part of the property as will be sufficient for that purpose.

But the interest on this debt it was the duty of the life tenant to discharge; such is the settled rule of law. 4 *Kent Com.* 74; *Coote on Mort.* 438; 1 *Story's Eq. Jur.* § 488; 3 *Powell on Mort.* 921; *Hungerford* v. *Hungerford, Gilb. Eq. Rom.* 69; *Lewis* v. *Nangle, Amb.* 150; *Ld. Penrhyn* v. *Hughes*, 5 *Ves.* 106; *Kennoul* v. *Money*, 3 *Swanst* 203, note; *Faulkner* v. *Daniel*, 3 *Hare* 206.

And although the general rule in equity is that interest is taken as accruing from day to day, yet as the husband was in the enjoyment of the property on which the improvements were made, and also that included in the mortgage, and by the terms of the mortgage the next half year's interest did not become due until after Mrs. Bockee's death, he must be held liable to the whole of the interest in arrear. This is his debt, and must be paid by him, and if not paid must be made out of his life estate in the residue of the premises not sold to raise the principal, if sufficient, before any of the estate of the infant heir is sold for that purpose.

But a judicial sale of a life estate in property like this, cannot in general be made without great sacrifice, and as

such sacrifice may require some of the infant's property to make up the deficiency, it is the duty of the court to protect the infant from loss, so far as possible. The rights of the parties are fixed. A. W. Bockee and his estate are bound to pay all arrears of interest, and the infant or his estate is liable to the complainant for it, in case the father or his estate does not satisfy it. And this court has the power of subrogating the infant to the rights of the mortgagee, as against A. W. Bockee, if the interest should be paid by the infant, or by a sale of his estate.

Let it therefore be referred to a master to ascertain and report the amount due to the complainant for interest, and to report what part of the mortgaged premises sufficient to make the principal and complainant's costs, can be sold with the least injury to the estate; and to inquire and report whether the life estate of A. W. Bockee in the remainder, can be sold so as to raise sufficient to pay the interest due to the complainant, and a proper share of the complainant's costs; and if it cannot be sold for that amount, or if it is *doubtful* whether it will produce sufficient for that purpose, to report what other part of the mortgaged premises can be sold sufficient to raise such interest and costs, with the least injury to the remainder of said estate.

And if A. W. Bockee shall not pay the amount due for interest, and such proper share of the costs, within thirty days from the confirmation of the master's report, then the property shall be advertised for sale, and at the sale the part reported as proper to be sold for the principal and costs shall be first sold. Next, the life estate of A. W. Bockee, as tenant by curtesy of the residue, shall be sold. And if the same is not bid up to the amount required to pay the interest and a proper share of the costs, it must be bid in and purchased by the guardian, in the name and for the benefit of the infant. And in such case, such part of the lands as the master shall have reported for that purpose, must be sold to make the interest and its share of the costs; such sale to be of the fee, including the life estate and remainder. After

this sale, the infant will, by subrogation, be entitled to receive the moneys so raised out of his property for the debt of his father out of the life estate of his father, and will be entitled to receive the deed for the life estate of his father, bought in for him, without any further payment than that made by the sale of his property.

If A. W. Bockee does not pay the interest and his share of the costs, he may be at liberty to release his life estate to the infant before the sale, in which case the interest and costs will be raised out of the infant's lands, without a sale of the life estate. The proportion of the costs of the complainant and of the sale, to be raised and paid out of the life estate, will be the proportion which the interest, calculated up to the sale, bears to the principal sum.